Carol STONEHOUSE

v.

CITY OF PITTSBURGH
and Glenn Cannon.

Appeal of CITY OF PITTSBURGH,
Appellant.

Commonwealth Court of Pennsylvania.

Argued March 12, 1996.

Decided May 13, 1996.

■■■■■■■■

Howard J. Schulberg, Assistant City Solicitor, for Appellant.

Paul D. Boas, for Appellee.

Before DOYLE and FRIEDMAN, JJ., and NARICK, Senior Judge.

DOYLE, Judge.

The City of Pittsburgh and Glenn Cannon (collectively, the City) appeal an order of the Court of Common Pleas of Allegheny County which denied the City's motion for post-trial relief and reinstated Carol Stonehouse as a police officer with back pay.

The undisputed facts may be summarized as follows.[1] Stonehouse began employment with the City as a police officer in 1979. On March 17, 1983, Stonehouse was charged with homicide for the death of a fellow police officer, William Walsh, and suspended without pay. The City scheduled a hearing before a Trial Board under the provisions of Section 7 of the Police Civil Service Act (Act), Act of August 10, 1951, P.L. 1189, *as amended*, 53 P.S. § 23537.[2] On March 23, 1983, Stonehouse sought to have the Trial Board proceeding continued when she filed an application stating: "I, Carol A. Stonehouse, have received notice that a Trial Board is to be convened on March 28, 1983, at 10:00 a.m. in the Public Safety Building on charges involving violations of Sections 2.01 and 6.01. At present, there is a pending criminal charge involving this matter, and

therefore, I am waiving my right to a Trial Board at the time set *until said criminal matter is terminated.*" (Stipulation of Fact No. 7, Exhibit No. 2; R.R. at 40a.) (Emphasis added.) The City "did not object to the continuance requested by [Stonehouse]." (Stipulation of Fact No. 10; R.R. at 33a.)

On September 14, 1983, the criminal trial began, and, on July 25, 1984, a jury found Stonehouse guilty of third degree murder. She appealed and the Superior Court affirmed;[3] however, on March 3, 1989, the Pennsylvania Supreme Court reversed the conviction and ordered a new trial.[4] Subsequently, on March 19, 1990, after a bench trial, Stonehouse was found not guilty, and all criminal charges against her were dismissed.

Stonehouse, on April 17, 1990, requested reinstatement as a police officer, and the City agreed to reinstate her with full seniority on May 1, 1990. After the City welcomed Stonehouse back to the police department,[5] Stonehouse twice requested the City to pay her back pay for the period between March 17, 1983, the date of her suspension, and May 1, 1990, the date of her reinstatement. The City responded that it would submit the matter to the Trial Board but that "under no condition could back pay be awarded for the time during which Officer Stonehouse was convicted of third degree murder." (Stipulation of Facts, Exhibit No. 6; R.R. at 45a.) The City further offered to "forego a trial board and pay [Stonehouse] full back pay for the time period from her suspension (March 17, 1983) until the date of her murder conviction (September 14, 1983)." *Id.*

1. The parties stipulated to the underlying facts. (Reproduced Record (R.R.) at 32a.)

2. Section 7 of the Act states in part:

   No employe in the competitive class in any bureau of police in any city of the second class, except any such employe who has been convicted of a felony and whose appellate remedies have been exhausted, shall be removed, discharged or suspended for a period exceeding ten days....

   53 P.S. § 23537. Section 7 was amended by the Act of March 20, 1990, P.L. 78, effective sixty days later. It currently provides for summary dismissal of any employee of the police bureau who is convicted of a felony.

3. *Commonwealth v. Stonehouse,* 358 Pa. Super. Ct. 270, 517 A.2d 540 (1986), *rev'd,* 521 Pa. 41, 555 A.2d 772 (1989).

4. *Commonwealth v. Stonehouse,* 521 Pa. 41, 555 A.2d 772 (1989).

5. The City sent Stonehouse a letter which stated in part:

   Upon receipt of your [request for reinstatement], I spoke with Chief Pampena regarding your return to work as a Pittsburgh police officer. It is my understanding that he has spoken with you of the steps necessary for your return to duty....

   Hopefully, your return to work can be handled quickly and efficiently. Welcome back. (Stipulation of Facts, Exhibit No. 4; R.R. at 43a.)

Stonehouse then filed a declaratory judgment action in the court of common pleas asserting a claim for back pay for the entire period of her suspension, less her earnings from other employment she had obtained during that period of time. The court of common pleas entered judgment in favor of Stonehouse granting her back pay in the amount of $129,083.94. The City filed a motion for post-trial relief in the nature of a motion for judgment *non obstante veredicto,* which the court denied. The City now appeals to this Court.

The City argues that: (1) because Stonehouse "waived" her right to a Trial Board hearing, she was barred from receiving back pay for the time she was suspended; (2) Stonehouse's action for back pay was barred by the statute of limitations; and (3) if Stonehouse is eligible for back pay, the City is not required to provide back pay for the time period in which she was a convicted felon.

■ The City asserts that Stonehouse waived her right to back pay because she never requested a Trial Board hearing, and for support relies on *Zeber Appeal,* 398 Pa. 35, 156 A.2d 821 (1959).

The facts in *Zeber* are distinguishable, however. On September 16, 1954, Zeber, a fireman was arrested for engaging in sexual conduct with a mentally retarded sixteen year old girl. As a result, Zeber was suspended pending a Trial Board hearing. A Trial Board hearing was held twelve days later in which the Board heard evidence and made factual findings. The Trial Board through its own initiative did not decide the case, but rather continued the suspension " 'indefinitely or until such time as the pending criminal case is disposed of in the Courts; meanwhile the Trial Board ... reserves the right to reconvene at a future date and make final disposition.' " *Id.* at 38, 156 A.2d at 823. Zeber was informed of the findings, and of the indefinite suspension by the Board, and was advised that he had five days in which to reply. Zeber did not reply.

Zeber was found not guilty of the criminal charges in June of 1957, and on July 15, 1957, he requested reinstatement and back pay. The Trial Board reconvened and recommended his dismissal. Zeber appealed, requesting, *inter alia,* back pay for the period of suspension because the disposition of the Board occurred more than ten days after his suspension. The Supreme Court concluded that Zeber had waived his right to contest the lack of compliance with Section 7 of the Act, which requires that *a hearing* be held within ten days of a suspension, because he had not protested at any time that his removal and suspension had been done improperly. Zeber, by failing to respond to the indefinite suspension unilaterally given by the Board, waived his right to argue that he should be given back pay for the time period of "improper" suspension.

*Zeber* is inapplicable to the instant case. It is undisputed that Stonehouse requested that the Trial Board hearing be *postponed* until after the criminal matter was resolved, not *waived,* and that neither she, *nor the City,* ever requested a hearing after the criminal matter had been concluded. Stonehouse clearly did not waive her right to back pay when she merely requested a postponement of the Trial Board hearing. Although the hearing did not occur in accord with Section 7 of the Act, the City and Stonehouse both agreed to delay it. Unlike in *Zeber,* no hearing before the Trial Board ever occurred prior to the City reinstating Stonehouse on the police force. The City essentially abandoned the Trial Board hearing when Stonehouse was welcomed back by the City with full seniority restored. Accordingly, we hold that Stonehouse did not waive her claim for back pay during the period of suspension by requesting a postponement of the Trial Board hearing.

Section 8 of the Act, 53 P.S. § 23538, states in part that: "[i]f the civil service commission shall fail to sustain the decision of removal of the officer, the person sought to be removed shall be reinstated with full pay for the entire period during which he has been prevented from performing his usual employment." Thus, since no decision of removal occurred, and no just cause for her suspension was demonstrated, Stonehouse is entitled to back pay for the period of suspension.

■ The City also argues that Stonehouse's claim for back pay is barred by the two-year statute of limitations. The City asserts that the cause of action arose on March 29, 1983, ten days following her sus-

**1308**

pension, because that was the date on which the City failed to comply with the requirement that a Trial Board hearing occur within ten days of the suspension.

■ Section 5524 of the Judicial Code, 42 Pa.C.S. § 5524, provides that actions against a governmental unit based upon non-payment of money, must be initiated within two years of the date on which they accrue. "The true test in determining when a cause of action arises or accrues is to establish the time when the plaintiff could have first maintained the action to a successful conclusion." *Kapil v. Association of Pennsylvania State College and University Faculties,* 504 Pa. 92, 99, 470 A.2d 482, 485 (1983).

Stonehouse *and the City* agreed to postpone the Trial Board hearing until after the criminal matter terminated; thus, Stonehouse's cause of action accrued on March 19, 1990, the date criminal proceedings ended. Stonehouse requested back pay on September 14, 1990 and again on November 13, 1990. Then, on January 23, 1992, she filed a declaratory judgment action with the court of common pleas. Clearly, Stonehouse's claim was not barred by the two-year statute of limitations.

■ The City's final argument is that Stonehouse is not entitled to any back pay during the period of time in which she stood convicted of third degree murder. The City asserts that if any back pay is due it should only encompass the period between March 29, 1983 (ten days after the date of suspension) until the date of her murder conviction on September 14, 1983, because after that date she stood convicted of third degree murder.

Section 7 of the Act, 53 P.S. § 23537, states in part that "[n]o employe ... in any bureau of police in any city of the second class, except any such employe **who has been convicted of a felony** *and* **whose appellate remedies have been exhausted** shall be removed, [or] discharged ... except for just cause." [6] For a police officer to be dismissed on the basis that he or she has been convicted of a felony, he or she must have been convicted, that is, found guilty and

sentenced, **and** must have exhausted his or her appellate remedies. 53 P.S. § 23537. Stonehouse had not exhausted her appellate remedies until March 19, 1990, at which time she was found *not* guilty. Therefore, the City had no grounds to discipline Stonehouse, and she is entitled to back pay for the entire time period of her suspension under Section 8 of the Act.

Accordingly, we affirm the order of the Court of Common Pleas of Allegheny County.

McGINLEY and PELLEGRINI, JJ., did not participate in the decision in this case.

### ORDER

NOW, May 13, 1996, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby affirmed.

---

**6.** Section 7 as amended by the Act of December 22, 1967, P.L. 1177 (emphasis added). The original Section 7 of the Act did not contain the phrase "and whose appellate remedies have been exhausted." *See* Act of August 10, 1951, P.L. 1189.